Theresa Garner
Plaintiff,

v.

FBI
Defendant

FTCA FBI/FTCA Administrative Claim/Amendment

**Basis of Claim**

I.
**Introduction**

Since May 10, 2023, the Federal Bureau of Investigation and Special Agent Schaeffer ("FBI") ("SAC") possessed credible witnesses from a number of sources, Claimant's in person complaint and corroborating evidence of the ongoing wrongful acts to date FY2024 April 29, without investigation, for having participated in WhistleBlower Protected litigation ("WP"), pursuant to the WhistleBlower Protection Act, ("WPA"), against the Claimant's federal government dual appointed employers(ees), the United States Department of Justice representatives, ("actors") Title 7 and WPA valid, meritorious claims and successfully completed (2) settlement agreements, (2) separate agency dual appointment in the District Court of Arizona, Chief Judge GM Snow and MSPB California.

In the aforementioned span of time to present April 29, 2024, the FBI SAC Schaeffer received multiple reports of wrongful acts of a federal government employee/agency, i.e., 1.) misuse of the Claimant Ms Garner's personally identifiable information (PII); and 2.) misuse and interference of her credit, and 3.) misuse of credit card; and 4) Blacklisting Blackballing, communications threats, harassment, resulting in physical harm, I e., sexual assaults abuse twice.

FBI SAC was in a position to create and complete a FD-71, which opens the case, as well as Form FD-302, report with affiant's signature and had ample time and opportunity to investigate numerous incidents between April 2024 through June 6, 2017, (78) + months, but negligently failed to do so, conspired with the highest-ranking officials within the United States to conceal this knowledge and abuse. There has been no response to a 2nd, 3rd, + OIG DOJ report, since 5/10/23.

These are only examples of credit interference originated by a federal government employee/agency and recorded and produced and continued as direct evidence in the District Court of Arizona, Chief Judge GM Snow case CV-15-01425-PHX-GMS, CV-16-00533-PHX-GMS.

1

On April 29, 2024, the incidents continue after settlement, the direct evidence recording was submitted, which demonstrated criminal misuse of Ms Garner's credit, credit card, name, address, social security number, other P.I.I., to book an airplane ticket in her name and separate credit card unauthorized charges and other misuse including but not limited to the US DOC BOC purported data breach announcement on Claimant's data. No SAC investigation has ever taken place unknown at the time of in person reporting to the FBI. These wrongful acts are acts of omissions to investigate concealed.

Another incident included a 3rd party travel agent who booked an airplane ticket with the same/similar unlawful acts of credit abuse with the conversation recordings submitted to the AZ Chief Judge, Snow produced and provided to the FBI.

1.  Adverse Wrongful Acts

On April 29, 2024, less than (2) years ago, from filing a Notice of Claim September 28, 2023, with the US DOJ FBI, a response provided November 6, 2023, these aforementioned credit wrongful acts by a federal government employee/employer recorded DOC resulted in a lien on the Claimant's employment rental property $300,000 valuation with renovations, a 2nd home loss $385,000, from threat and credit abuse, and loss of employment rental future income and dwelling from the federal government SAC negligence failures to investigate or act on the reported credit abuse. The SAC had direct access to all flight radar threatened at 1st house but chose to look the other way. (omission) No SAC investigation.

2.

On April 29, 2024, the DOC has refused to provide a number of FOIA requested response, regarding credit interference, and the data breach purported by the DOC or failures to act by SAC.

**BACKGROUND**

The Claimant was a Whistleblower reporting federal employee Roger Quindel, a valid claim, who was eventually terminated for Title 7 violations, gross mismanagement, theft, lock out, racist misconduct and slurs against American Indian and African American Assistant managers federal employees.

The Federal Tort Claims Act  is a federal legislation enacted in 1946 that provides a legal means for compensating individuals who have suffered personal injury, death, or property loss or damage caused by the negligent or wrongful act or omission of an employee of the federal government.

A "successful," "valid", "volunteered", polygraph examination was completed by the Claimant, with the City of Greenfield Wisconsin Police Department Polygraph Examiner Jeffrey Arbinger ("Arbinger") 37+ years veteran passing at 100% truthful, 100% no deception, regarding the federal employer's Whistleblower (WPS) negative intent disclosure and plans after settlement towards the Claimant by the actors disclosures made by the United States Department of Defense Deca DLA (DOD) supervisors Knight and Stall. These successful results were completed on June 27, 2019, "before" any more ongoing new wrongful acts and disparaging, Blacklisting Blackballing, defamatory illness contacts occurred, between the actors, to and from federal agency/employee to State Governor Tony Evers Office and staff, Wisconsin Equal Rights Department ("MSOB") ("ERD"), State Capitol Police, federal border police, Milwaukee Police Department and others ongoing through April 2024. The ongoing wrongful acts were partially disclosed, others still withheld, unknown at the time up until the withheld and concealed Claimant's requested FOIA was released by the Wisconsin State Capitol Police August 7, 2023 withheld and refused for months.

In this case, the Claimant losses caused by SAC failures, and omissions to act, damages to properties $100,000 by the responsible actors, and wrongful death of Claimant's mother $10,000,000 without threats investigation by the FBI. Injuries of sexual assault/abuse occurred twice $4,000,000, 1st sexual assault/abuse made to strip naked and virginia inspections injuries resulted in convulsions, brain injury, and left unconscious (9)+ hours without medical treatment/aid, with no FBI investigation (unknown at the time of the responsible party or investigation not completed) and medical billed on Claimant's credit report $5,000+ with interest, witnesses were available to the FBI, but not interviewed. The FTCA events $10,000,000 arising from intentional infliction of emotional distress compensatory damages. Witnesses at the Claimant's federal employer the United States Department of Defense ("DOD") confirmed the negative intent disclosed to the FBI, intent crossing state lines to Wisconsin and other States, while traveling i.e., wrongful acts of threats, to/from/at the Equal Rights building (ERD) (MSOB) $1,000,000, and actors Blacklisting to Governor Tony Evers Office and staff $1,000,000, caused by negligence, wrongful acts, omissions, intentional infliction of emotional distress and the FBI negligent failure to investigate.

The federal government supervisor Knight DOD disclosed the wrongful acts planned by the federal government employer/arm. This intent includes circulation and publication of a false claim illness to others comprehensively globally about the Claimant. As well as, false and made up criminal defamation claims, 908. 18 U.S.C §1001 of a battery against the Claimant, when there was no such assault or battery, as claimed/orchestrated by scheme and devices by the actors, as such this matter did "not" arise from any action of any assault or battery as there

was 'no' assault or battery proven by the Claimant. (video surveillance footage available) Additionally, neither incident arose from false imprisonment or arrest as the first and second incident resulted in detainment and/or section. The first incident is by law considered neither an arrest or imprisonment, but considered a detainment ("section"). Therefore, the aforementioned incidents fall under the purview of the scope of the FTCA SF95. No FTCA exception applies here § 2680. The Claimant on both incidents was sexually assault and abused, when no assault or battery or infraction of law took place. (Video Recorded) These adverse federal government allegations and omissions fall under the purview of the ongoing Continuous Violations Doctrine tolling statute of limitations to April FY2024.

As of April 2024, the Claimant's federal government seized vehicle theft by fraud, and wrongful confiscation of property and valuable contents at $100,000, by federal actors, with interest by scheme and devices 908. 18 U.S.C §1001 wrongful acts, withheld since FY2017, 78+ months. Attorneys Julie Nelson a.k.a. Neilson, Amanda Nelson, Police Officers Eduardo Cruz, Grannis, Sanders, Mrs Cruz and multiple actors are involved. (RICO)

The federal government actors can be held liable for the FTCA SF95 for SAC failures to investigate, negligence and gross negligence.

The actors have threatened the Claimant over time through April FY2024, multiple times evidence found through a September 26, 2023, FOIA, from federal actors negative employment references to State of Wisconsin Capitol Police event/incident false police reporting, crossing State lines and omissions and attempt to conceal facts and/or withheld FOIAs, have been ongoing from the DOJ FBI FOIAs, US DOJ FOIAs, US DOJ USC FOIAs, OIG's response, and some non responsive.

II.
**New York Adult Survivor Act 2022 (ASA), ongoing Continuing Violation Doctrine NY, Statute of Limitations Tolled**

Wrongful acts of sexual assault abuse occurred twice, a second time while traveling on the Amtrak train, Niagara Falls, NY, approximately March, 2018 unknown at the time of the nexus and causation of the responsible party(ies). (14)+ police incidents have occurred to date April 2024, and have been ongoing after notifying the FBI in person of threat warning by the DOD (witnesses) (no FBI interview) involving federal actors communications to i.e., 12-14 Buckeye police, federal border police, State Police, and Governor Tony Evers and staff knowledge. The above aforementioned incidents are considered intentional infliction of emotional harm. A series of "photographed" military force threats occurred at Claimant's newly built home at 1688 S 236th Dr. Buckeye AZ

85326 and captured, a wrongful act in violation of the WPA, reported in person to the FBI on June 6, 2017. No investigation occurred by the FBI unknown at the time or SD 71 with the Claimant's affiant signature

The WPA (5 U.S.C. 2302(b)(8)) protects federal employees or applicants from retaliation for making protected disclosures. The Whistleblower Enhancement Act 2011, Whistleblower Protection Act and No Fear Act is applicable as well. The WPA also provides penalties for supervisors who retaliate against WhistleBlowers.

The Claimant's supervisors at the United States Department of Defense, ("DOD") James Knight ("Knight") and William Stall ("Stall") knew about the negative plans of wrongful acts and failed to report these wrongful acts, after the WPA settlement agreements 10/2016 and 9/2016.

On 11/1/2016, the Claimant started a new position with the DOD too competitive selection. The staff knew about the negative intent and ongoing Blacklisting, Blackballing by the actors. The actors immediately began numerous planned vengeance WPA wrongful acts and disclosed them to the Claimant's supervisors DOD, college colleagues etc. i.e., disability false statements, attempting to get her fired or worse, when the actors learned about the Claimant's new DOD job offer and position.

(78)+ months later, it is clearly reported by the State of Wisconsin Capitol Police that the actors are still responsible for wrongful acts, negative employment references contrary to the settlement agreements, intent and intentional infliction of emotional harm on ongoing disparaging contacts, learned through FOIAs FY2023, with no FBI investigation. Per credible witnesses, the actors directed the RICO involved to keep silent and were reported to have continued this criminal pattern crossing state lines, global to the police, police database, State of Wisconsin Capitol police, Sheriff, West Allis police, Governor Tony Evers Office and staff, college colleagues, high school colleagues, federal border police causing adverse damages, injuries, from wrongful acts, omissions and constitutional violations, ERD filings blocks and not processed, and EEOC filings blocked, and FTCA wrongful acts.

Approximately 11/2016, the DOD Knight alerted/warned the Claimant of a visit from the actors to the DOD, 'after' settlement agreements, and their negative intent towards the Claimant. The threat at the Claimant's 1st house photographed and warned by the DOD prompted an in person FBI report, on June 6, 2017. (SAC)

All such wrongful acts aforementioned are criminal, resulting in extensive damages, without SAC FBI investigation or intervention unexplained partiality and gross negligence.

In these ongoing gross negligence and mismanagement negligence, under the Doctrine of Continuing Offenses, "where there is a series of continuing wrongs," the statute of

limitations will be 'tolled' to the last date on which a wrongful act is committed, April 21, 2024, and continuing. The statute of limitations for a continuing offense **does not run until the last act is done,** which, viewed alone, is a crime, as in this case. *State v. Miller*, 2002 WI App 197, 257 Wis. 2d. 124, 650 N.W.2d 850, 01-1406, 651. STATUTE OF LIMITATIONS FOR CONTINUING OFFENSES, Normally, a statute of limitations begins to run on the date when the offense is completed. **See** *Toussie v. United States,* 397 U.S. 112 (1970). Some offenses, by their nature, have attributes of non finality and are called continuing offenses. For example, as is conspiracy, conspiracy is a continuing offense. For statutes such as 18 U.S.C. § 371, which require an overt act in furtherance of the conspiracy, the statute of limitations begins to run on the date of the last overt act. **_See_** *Fiswick v. United States*, 329 U.S. 211 (1946); *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986). For conspiracy statutes which do not require proof of an overt act, such as RICO (18 U.S.C. § 1961) or 21 U.S.C. § 846.

Multiple supervisors of the Claimant's dual appointed jobs with the DOL and DOC, DOD knew about the negative intent against the Claimant for her WhistleBlower activities were: Carla Mungai, ("Mungai"), United States Department of Commerce ("DOC"), Mark Hendricks, ("Hendricks"), Cathy Lacy ("Lacy"), Deanna Broker ("Broker) United States Department of Labor Bureau of Labor Statistics, ("DOL"), Mike Benton ("Benton"), Michael Leon Greene ("Greene") college colleague and his family and a number of others (high school colleagues) none of which were interviewed by the FBI. No mandatory documentation by the FBI SAC Schaeffer occurred including the failures to complete a FD-71, which opens the case, as well as Form FD-302 or sworn statement with the affiant signature. (unknown at the time)

A meeting about the negative intentions of the actors were held at the DOD's office of Knight and a separate meeting at the DOD's office of William Stall ("Stall") after Knight's disclosure. (RECORDING)

On June 6, 2017, FBI SAC neglected his duties in investigating/interviewing the credible witness warnings available at that time. On or about FY2020-April 29, 2024, several State of Wisconsin Capitol Police have made unwarranted written and verbal recorded arrest threats, arising from the same actors same misconduct wrongful acts banning the Claimant from the MSOB building, without cause, a civil rights and 1st amendment violation, constitutional violations, Whistleblower Retaliation, a s. §1983 violations, openly lied about unsupported FOIA requested conversations between the Claimant, when the Claimant knows better than to speak without an attorney present, failing to produce the requested body cam, recordings, FOIA and Wisconsin Open Records to date constantly requested audio and body camera footage to support their unsupported written falsehoods, failing to provide a valid reason for banning the Claimant, blocked/concealed (7) + or so FOIAs, which were requested (20) or so months ago and withheld with a partial response on or about August 7, 2023 received. This concealment and wrongful federal communications and acts of misconduct nexus and causation arose from negligence of SAC the sole reason why the Claimant 2nd house was lost, having

the same party/actors responsible for blocking the Claimant's civil rights filing at the ERD, housing discrimination, etc, social security number violation, threatening her at the ERD, and Marriott Visa and American Express credit cards blocked, as direct evidence was documented and produced in the District Court of Arizona, Chief Judge GM Snow cases below.

The unlawful wrongful acts, threats and retaliatory criminal acts by the federal actors have continued from WPA cases:

CV-15-01425-PHX-GMS, Settlement Agreement
CV-16-00533-PHX-GMS. Settlement Agreement
MSPB-SF-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-I-1 Settlement Agreement

The United States does not feel that the Claimant had the right to have file or participate in valid WhistleBlower case settlement agreements for fraud, waste, gross mismanagement, abuse and has been expressing WPA civil rights violations by illness false and falsified claims, threats, police arrest threats, circulation and publication of wrongful unsupported illness claims to State Police, federal border police, government dignitaries, double jeopardy wrongful acts for (78)+ months, circulated and published to multiple witnesses, and no SAC FBI interview.  SAC's gross negligence to investigate upon learning of potential injuries continued until April FY2024. These adverse actions and negligent statements were communicated to the Claimant's then attorney Nino Abate, directing Abate to have the Claimant drop all her cases! All cases of wrongful misconduct by federal employees are/ were valid, true and proven in District Court AZ and supported by settlement agreements and should have been immediately and effectively dealt with by the supervisors, "before" a lawsuit engaged, rather than leaving it up to the Claimant, then blaming the Claimant for their failures and SAC gross negligence.

The FTCA case includes wrongful misconduct by (2) attorneys (possible federal employee) Julie Nelson, a.k.a. Neilson, Amanda Nelson, and a 3rd attorney (name unknown) appearance at the unwarranted detainment scheme (not considered an arrest or false imprisonment) 1 of 2 RICO criminal wrongful acts. (18 U.S.C. § 1961) or (21 U.S.C. § 846) Julie Nelson, a.k.a., Neilson in front of multiple witnesses purported and misrepresented her identity to get into Banner Health Peoria whereas the Claimant was detained to be a "social worker" (fraud, federal wrongful act) working for Banner Health, Peoria Health Center ("Peoria Incident"), June 6-12, 2017, when she was/is in fact a lawyer, a crime. (possible US Assit. Attorney, San Francisco, California) The Claimant was detained for more than 7 days a violation of civil rights beyond 3 days law for a false claim of "assaulting a fictitious party." (no assault ever happened, video taped) As of October 10, 2023, the Peoria Incident Banner Health Custodian of Records has verified in writing that no such employee "Nelson a.k.a. Neilson" has "ever" worked for Banner Health. (fraud) (RICO) (conspiracy) The Claimant was able to verify these facts through "Banner Health" records and certified on October 10, 2023. SAC gross negligence and

failures to investigate could have resolved future injuries and other damages. (**Frame up or setup scheme- a situation where someone pretends that an innocent person has committed a crime by deliberately lying or inventing evidence. False charge, fabrication, and double jeopardy wrongful acts) (This frame up is the origination of false disability communications ongoing to date federal employees wrongful acts.)**

Additionally, to date April 2024 and ongoing, attorneys Nelson a.k.a. Neilson and Amanda Nelson has interfered and/or blocked the information of car theft, car insurance, denied investigation, and AAA reimbursement for actors RICO involved, Wisconsin car insurance ("OCI") blocked as well, with falsehoods of no insurance false claims, FOIAs blocked for the retrieval of Claimant's federal government involved stolen Kia Rio vehicle for the Claimant's illegal government seized vehicle by the Buckeye AZ police department ("Buckeye") and actors aforementioned involved. No SAC investigation. SAC and the aforementioned RICO/actors had full knowledge of the whereabouts of the vehicle and facts of the missing vehicle, but have completely denied any knowledge now falsely, but these statements are inapposite of the truth and witnesses were available for the FBI SAC investigation. This is gross negligence.

FBI officials, who possessed this knowledge of this fraudulent RICO criminal conspiracy activities were in a position to end the abuse, failed to interview available witnesses and threats augur, were grossly derelict in their duties resulting in Claimant's multiple unwarranted threats, and/or identity theft (misusing the Claimant social security number in District Court recordings), military force threats photographed at Claimant's 1st lost home, threats against family, wrongful death of mother failing to protect, Claimant's catastrophic injuries while detained including sexual assault/abuse twice, property damage, property theft thru government seizure of vehicle by fraud, false imposter Blacklisting Blackballing claims ongoing, social security & data breaches proven in District Court AZ recordings, economic and financial damages by PII breaches, (direct evidence recovered) bank & credit card blockage and fraud, (direct evidence filed with Judge GM Snow District Court AZ) USPS blocked mail, (FOIA discloses the State Capitol Police of Wisconsin responsible parties for privacy violations (direct evidence secured) and blocked USPS mail 9/23/2023 discovery) false fraud allegations and mail boxes closed based upon blacklisting of the aforementioned actors) threats of arrest incidents, properties losses ($685,000), witnessed detainment schemes and devices, reputational damage, POD break in and theft of surveillance equipment and intentional infliction of emotional distress. Gross negligence by SAC, and no FBI investigation, or interview has ever taken place, with the Claimant's affiant signature on a FD-71.

The Claimant's SF95 submission demonstrates clear and convincing evidence that no assault or battery occurred, per video footage and Julie Nelson, a.k.a. Neilson wrongful acts in order for the Claimant to be detained, advocated detainment, purported social worker false identity, purported and produced an unauthenticated Holiday Inn Exoneration Vindication letter 7 days later after the scheme failed. (wrongful acts) (RICO) (fraud) (conspiracy)(theft) These SAC negligence/failures to investigate sexual

assault/abuse twice is negligent, gross negligence, failures to act, omissions, complete and utter failures to process and report to State law enforcement officials, failures to prevent threats, and interview credible witnesses available for interview, after June 6, 2017 and present April 2024. Additionally, the WPA violations are 1st amendment rights gross negligence.

The mandatory duties breached by the FBI SAC included the duty to properly investigate the person complaints received, impartiality, to tell the truth about the status of investigation, to properly handle and collect evidence and to timely report federal employees and federal employers criminal conduct to appropriate state law enforcement.

Even minimal compliance with these mandatory duties would have prevented the harm to the Claimant between presents April 29, 2024 and June 6, 2017, and present.

This Claim is brought on behalf of the Claimant who was injured, billed for injuries placed on her credit report (unknown when the delayed billing was placed on the Claimant's credit report discovered upon filing this SF95), caused by gross negligence and wrongful acts by a federal employee in the scope of their position. The 2nd loss of property $300,000, FTCA SF95 filing was completed within less than 2 years (2509 N 18th Street, Milwaukee, WI 53206) upon learning of the actors gross negligence, nexus and causation involvement. Losses and damages include: property losses, damage to property, frame up, ongoing threats and trespassing reported and by multiple witnesses accounts and reported to the FBI. These initial threats disclosures were made by her supervisors at the US DOD, college colleagues and other credible witnesses and sources supported after June 6, 2017 through present April 29, 2024 to the FBI.

### III. Statement of Facts

1. The SF95 submitted by the Claimant Survivor in support of this Administrative Claim is based on the **Continuing Violation Doctrine (***Toussie v United States***,** 397 U.S. 112 (1970) from June 6, 2017 to present, injuries include being left on floor then dragged to bed in 1 of 2 detainment, more than (9)+ hours unconscious convulsing and sexual assault/abused purportedly exonerated by the Holiday Inn Corporate Office Headquarters, but Julie Neilson a.k.a. Nelson authored the "purported letter" (no investigation by the FBI), whereas federal government employee(s) and actors were reported by witnesses responsible for the heinous wrongful acts. No incident of assault

or victim of assault ever occurred, as orchestrated by the actors, (RICO) and 12-14 police officials of the Buckeye Police Department involved, (still working) including car theft. There was never any assault or battery by the Claimant in the section/detainment, therefore this matter does not arise from or categorized as an assault, battery, arrest or (false) imprisonment, (FTCA criterions met) which is attached to this submission as Ex. 1 and incorporated in this statement of facts by reference.

On April 29, 2024, to June 6, 2017, 2 sexual assault/abuse, and wiped data took place with no SAC investigation took place, even though the Claimant reported the aforementioned witnessed disclosure less than 90 minutes earlier before the assault/abuse. The FBI SAC Schaeffer never followed through or investigated completely unknown at the time of incident.

2. This SF95 is also based on the sworn testimony taken by the Claimant at the City of Greenfield Police Department Polygraph Examiner Jeffrey Arbinger ("Arbinger ") 37 years veteran June 27, 2019, passing at 100% truthful, 100% no deception. Ex. 2, (p. 1, Sworn Testimony of Claimant Ms Theresa Garner former federal government employers (ees) US DOD DLA witnesses reported negative intent planned and active at the time of the Claimant notice to SAC, Claimant's polygraph test was successful at 100% truthful and 100% no deception, results and Greenfield Police Department Polygraph Examiner Arbinger's full resume credentials included)

3. This SF95 is also based on the false billing regarding the Peoria AZ incident of detainment injuries; the Complainant suffered sexual assault, abuse, section, injuries and economic damages now a negative remaining on the Claimant's credit report. (credit compromised by failures to act, investigate by SAC direct evidence produced at the AZ District Court Chief Judge GM Snow & recording) (unknown at the time)

4. The SF95 submitted by the Claimant Survivor in support of this Administrative Claim is based on the June 12, 2017, purported Exoneration, Vindication Letter by the purported Holiday Inn Corporate Office written letter, (fraud) (letter from Julie Nelson a.k.a. Neilson) and attempted continuous double jeopardy (78)+ months later ongoing incidents, pursuant to the ongoing Continuous Violations Doctrine.

5. SAC failed to properly handle, investigate, act or interview the DOC Chicago Regional Office Director who allegedly made unauthorized Personally Identifiable Information, ("PII") illegal booking of an airplane ticket by misusing the Claimant's social security number, using  the Claimant's name without authorization, P.I.I. and created a airplane travel ticket from Arizona to Minnesota, without her knowledge or authorization by contacting a 3rd party federal airline contractor for the purpose of attempted termination, (wrongful acts)(fraud)(direct evidence recordings filed and produced in District Court AZ). This aforementioned RICO, conspiracy, and fraud began the ongoing Doctrine of Continuing Offenses series of ongoing PII data breaches by the actors original wrongful acts, resulting in grave economic damages on (3) credit cards, lien and loss of 2nd

business dwelling, (4) bank accounts closed-Sunwest Bank AZ, Empower Credit Union WI, Walmart Money Card Bank account closure, Sprint phone 27+ years closure, financial damages, US DOC purported data breach, credit cards payments interference, bank interference totaling $60,000 with interest and lien/loss on 2nd renovated business dwelling, loss of 1st home from  military threats, loss of rental employment income and future income, car loss by fraudulent wrongful actors' acts government seized car and contents. $1,000,000 with interest, since FY2019 before and afterwards. Ex. 6, WPA CV-16-00533-PHX-GMS, & CV-15-01425-PHX-GMS & MSPB Settlement Agreements.

6. On August 7, 2023, the Claimant discovered that failures to investigate by the SAC resulted in an unknown lawsuit filed against the Claimant's blocked credit card and social security number PII breach by the actors on Claimant's American Express and Marriott Visa card. American Express unlawful process service occurred at a UPS store, and not a house at 1345 Jefferson St Milwaukee, WI 53203 unauthorized by law, without the Claimant's knowledge or proper service creating a lien resulting in property loss and rental employment income and future income losses.  (scheme and devise)

7. Less than 2 years from filing of the FTCA, September 28, 2023, Sgt Adam Haas ("Haas"), State of Wisconsin Capitol Police, confronted the Claimant, at the Equal Rights Division building Milwaukee WI, while at a ERD desk, threatened tried to intimidate her from filing a EEO and EEOC claim and threatened her arrest openly in front of witnesses, openly lied about conversations (RECORDED) at the ERD, (never having met this person), for participating in Title 7 activities and WhistleBlower activities. Haas interfered with housing and credit harassment complaint filings, which blocked the filing of the Claimant's discrimination claim. The Claimant's discovered the nexus of ongoing WP harassment via FOIA for having participated in previous Title 7 and WP activities 21+ years ago quoting the State Capitol Police report, Department of Administration ("DOA"). Haas then illegally banned the Claimant from the ERD 'permanently', with no such authority, arbitrary and capricious abuse of authority, unlawfully in written falsified event/reports citing Governor Tony Evers Office and staff and ERD directives, originated by the actors Blacklisting, Blackballing, wrongful acts, circulated and published original false detainment, proven false, and double jeopardy. Additionally, the ERD failed to cross-file 'any' federal EEOC complaints from FY2018-present, and actors blocked FOIAS up until April 2024. No SAC investigation has ever occurred. (record of this event of blocking is documented through FOIA received)

8. FY2021-present, Sgt Adam Haas and Department of Administration (DOA) threats continue and/or found through FOIA, civil rights and constitutional rights violations continue, section §1983 arbitrary and capricious abuse began the wrongful acts to interfere with the Claimant's attempts to stop the actors' ongoing wrongful economic financial interference, economic damages, credit interference proven in District Court, housing harassment and damages continue, USPS blocked mail 1500+ intermittent days by the State Capitol Police found was/is a direct result in the loss of rental and employment income, future income, and 2nd loss of 2nd employment dwelling. (RECORDINGS)

9. The SAC FBI failed to properly investigate, which has created a compilation of harm and intentional infliction of emotional harm and reputational damages by the ongoing blacklisting of the Claimant to the Social Development Commission, ("SDC") Milwaukee Police ("Milw."), threats of arrest, intentional circulation of disability false statements, i.e, the Claimant is an imposter to We Energies, & SDC, without an investigation resulted in being declined services for then rental employment business, damages to the then rental property eventually done by the same employers of the DOA State Capitol police employees. The DOA was recorded and found direct evidence of the DOA hacking the Claimant 's location, PII, IP address and electronic mail. As well as ATT was recorded to have changed the Claimant's **IMEI** unauthorized account phone changes, and PII privacy breaches ongoing. (RECORDED)

10. Mr Schaeffer, SAC, in the Arizona Field Office, was one of the highest authorities at that FBI Field Office. The SAC in charge Schaeffer, and Special Agents or SAs, failed to act, omitted basic duties, failed to investigate or interview several credible witnesses warning of imminent planned wrongful acts by the US DOD notice, without intervening.

11. Mr. Schaeffer SAC and several SAs officials are responsible for the gross mishandling of the US DOC, DOL, DOD WhistleBlower Retaliation investigation, the ensuing efforts to lie about and conceal the FBI's culpability for failing to stop ongoing criminal RICO, and considerable harm to the Claimant twice sexual assaulted, abused, detainment/section (7) days, whereas no crime or assault occurred, (exonerated by a 'purported' Letter of Exoneration by the Holiday Inn Corporate Headquarters, no assault occurred letter) detainment beyond the statute in violation of statute and the SAC was notified of the detainment by the Claimant at the time of detainment and the SAC hung up on the Claimant.

12. On 3/2018, Claimant was detained sexually assaulted abused, a second time while traveling on Amtrak, to Niagara Falls New York travel to Canada by Federal Border Police Sgt Kim and Sgt (last name unknown) (Sgt Eden supervisor) forced to strip naked, virginia searched, unwarranted and "data erased on devices," (unknown at the time) the purpose of the detainment. The detainment lasted approximately (9)+ hours and continued until the data was deleted on all of the Claimant's devices, under the

guise of lawful and necessary strip search, too much money when in fact this is exactly what the Claimant did for a living interviewing Canadian citizen and no such cap on money carried in or out of the U.S. exist (the false claimed reason for detainment) unknown at the time that claimant's data and devices were erased. These are wrongful acts by a federal border police. No SAC investigation to date. A police report was filed.

13. On June 6, 2017, the SAC did not make any report to civil local law enforcement authorities or Buckeye AZ Police, the same authorities who allowed injuries convulsions, brain injury, unconsciousness in the Peoria Incident to the Claimant June 6, 2017-June 12- 2017, directly after meeting with the SAC. (responsible party (ies) unknown at the time of incident)

14. A number of concocted false narratives and stories from DOA police and local police, regarding the purported Claimant's conversation and or false claims of conversations have been circulated and published according to witnesses' planned injuries. However, the Claimant records all 1 party consent calls both inbound and outbound, in person and the ongoing incidents of threats have continued despite the contrary direct evidence purported conversations. No investigation by the FBI SAC. Ex. 12 (RECORDED) Incidents

15. The FBI was fully aware that the Claimant reported in person threats by the actors from WhistleBlower Retaliation litigation for testifying against her federal employers who remained free to continue ongoing incidents of retaliation and failed to take steps to mitigate this ongoing threat to the Claimant.

16. To date, no investigation follow- up has ever been made by the FBI to the Claimant or affiant signature, regarding witnesses, or any protection up until present.

17. Despite the details, direct evidence, witnesses provided by the Claimant and being so required, SAC Mr. Schaeffer did not prepare the necessary FD-302, which is the official record of an FBI witness interview, to date.

18. The Arizona FBI Office did not formally document any of its investigative activity, including its June 6, 2017 in person meeting with SAC representatives and Claimant's other contacts telephone interview with the FBI. A FOIA and/or request for investigation for any/all documents were not provided and/or received.

19. Further, despite failing to take investigatory action to reach a conclusive determination, the United States Department of Justice FBI alleged transfer of the Claimant's complaint, when the FBI Civil Rights Division was the correct and proper jurisdiction original filing.

20. Despite knowing that the Claimant reported credible witnesses and ongoing unwarranted threats, photos of military force at the 1st home, detainment injuries; the

federal government employees continued to abuse the Claimant, the FBI Arizona Field Office did not advise state or local law enforcement authorities in any venue or jurisdiction about the allegations and did not take any action to mitigate the risk to the Claimant.

21. No action of any kind to date has been taken against any employers/employees, DOA, actors, even though approximately (350)+ exhibits, District Court AZ exhibits and other direct evidence was offered up to the SAC.

22. The FBI offices in Arizona, Wisconsin, New York, California and Chicago Illinois were, or should have been, qualified and experienced in investigating claims of sexual abuse/assault and matters related to WhistleBlower Retaliation.

23. While detained (2) attorneys came (1) purported to be a "social worker", falsely made this claim to multiple people, but in fact was a lawyer named Julie Nelson. A Julie Nelson has been researched as possibly a United States Assistant Attorney San Francisco, California. This fraudulent misconduct was for the purposes of planned harassment and stigma. (fraud) The planned detainment resulted in injuries and sexual assault/abuse failed when the purported Holiday Inn Corporate Headquarters was forthcoming with a written letter clearing the Claimant of any purported assault that never happened made up by the actors.The SAC knew or should have known to investigate/intervene any/all false claims including assault resulting in disability false statements. This painful experience is gross negligence and failure to act, omissions, intentional infliction of emotional harm and derelict of duties of SAC Schaeffer. '**SAC never investigated the identity of Julie Nelson and correlation/connection with the US Attorney San Francisco CA office**.'

24. To date, the federal government actors
negative intent contacts include, but
are not limited to instructions and
directions to state that the Claimant said
something "funny," and "stay silent".
These contacts were witnessed by the
DOD staff, circulated and published
crossing state lines, disability
false claims for the purposes of planned
injuries, per witnesses and polygraph test,
resulting in reputational injuries
including calls to witnesses: State Capitol
police, college colleagues, high school
colleagues, State Capitol police relaying
slanderous information to UPS/USPS mail
stopping and interference with the delivery
of mail, evolving into global slander with

distortions, half-truths and outright lies
about the Claimant and no SAC
investigation. (RECORDED transcript)

25. On about August 7, 2023 the Claimant requested a FOIA to Nelson a.k.a, Neilson, OCI Office of Wisconsin Insurance regarding her vehicle government seized theft insurance coverage reimbursement, knowledge about the theft was denied by both the Buckeye Police Arizona and Amanda Nelson and Julie Nelson a.k.a., Neilson. (Fraud, RICO) Wisconsin OCI, AAA, and CSAA involved. The Claimant had full coverage car insurance. The Claimant vehicle was seized by government seizure and knowledge was clear by the Buckeye Police Arizona phone call to witnesses. These wrongful acts of RICO were originated by the actors. The vehicle and contents have been withheld to date April 29, 2024, ongoing pursuant to the Continuing Violation Doctrine, the stolen vehicle allowed to be sold by the Arizona DMV, even though the vehicle had an official theft report on United States police database with the Raleigh NC Police Department since FY2018. The Raleigh NC Police has refused to investigate reported car theft instead making light of the failed investigation, ignored the police report and told to keep this matter silent by the actors involved. As of April 26, 2024, the EEOC has refused to produce a decision claimed and has withheld the disposition. The same orchestrated Peoria Incident injuries by the same Police Officers Cruz, Granniss and Sanders all have denied any knowledge via Internal Affairs recorded conversations. (RECORDED)

26. Julie Nelson, a.k.a. Neilson , a lawyer purported to be a "social worker" is part of this RICO, falsified her identity to multiple witnesses, and has failed to comply with the FOIA to date November 2023. Nelson, a k.a., Neilson, misconduct has yet to be addressed or investigated. No investigation by SAC FBI has ever occurred to date from June 6, 2017 to present.

27. The Claimant's Kia Rio and contents were a total loss of $100,000 with interest.

28. A number of RICO bad actors have escaped culpability for these criminal wrongful acts, WPA, gross mismanagement, fraud and abuse of authority, as well as failures to investigate by the FBI. The DOA of Wisconsin has written that the Claimant had been involved in previous valid WhistleBlower cases 21 years ago, printed the cases, purported as "too many" WhistleBlower cases in retaliation for participating in valid federal protected activities. WhistleBlower retaliation is a violation of law. Additionally, none of these parties know anything about the retaliation that occurs/occurred "afterwards", causing ongoing adverse incidents, resulting in more litigation, and have not interviewed the Claimant about the retaliation after the WhistleBlower activities or WhistleBlower filings facts or anything about the cases. All MSPB and AZ WPA cases were valid, supported resulting in settlement agreements and what is claimed as protected. Apparently, the actors had done research on the Claimant's WhistleBlower activities, (21) + years ago communicatiin by the actors which has nothing to do whatsoever with the State of Wisconsin or Capitol police authority, an abuse of authority.

15

Additionally, the posed litigation is protected by the No Fear Act, Whistleblower Retaliation Act, Whistleblower Enhancement Act and Whistleblower Protection Act and were valid and truthful.

29. The DOC and said actors are responsible party(ies) for the ongoing wrongful misuse of the Claimant's PII after settlement. The original breach and causation arose from the DOC Data Breach misuse of the Claimant's Marriott Visa card direct evidence given to the District Chief Judge G.M. Snow Arizona District Court 10/2016.

30. On August 7, 2023, the Claimant discovered the responsible parties involved regarding the adverse losses of home, credit, (marked as Patriot Act (terrorist) criterions failures), (3) major credit cards were blocked and payments denied, Empower Credit Union 100+ debit card declines and interference, Amazon prime interference 100+ transactions, social security applications blocked, passport blocked, IRS FY2019 (FY2018 Tax Return) delays (11)+ months and blocked W2 not provided, (the IRS OIG had to get involved), forced to produce identification before filing/return of tax return FY2024 January, USPS mail intermittent blocked 1500+ days marking property several times as vacant resulting in loss of law cases, (the OIG USPS had to get involved) UPS mail blocked (2) locations, disparaging false statements made by the State Capitol police notifying UPS Ohio that the Claimant was a possible "disability" (defamation) communications received from the ERD and actors, persecution false claims having never met or conversed with the Claimant, with this Corporal falsely claiming that the Claimant stated that the FBI was following her denied by the Claimant and a Cease and Desist notice was served warning that all calls outbound and inbound were entirely recorded and no such conversation claimed occurred as falsely stated. (RECORDED)

31. The Claimant was the top award winner for the Southwest United States by Microsoft Corporate Office Headquarters. FY2021, the Claimant was able to successfully track the IP hacker on her Google electronic mail resulting in identifying the hacker the DOA agency FY2020, PII breaches and Claimant's location tracking.

32. On FY2021-FY2024, the above unwarranted IP hacking is the timeline of unauthorized illegal privacy breaches by the DOA the employer for Sgt Adam Haas, State Capitol Police and other actors contacted 3rd party (ies) on multiple falsified incidents/event reports, false conversations with failures to produce the audio, video , body cam or any supporting information, per multiple FOIA request demands. (A FOIA was received from an independent State agency stating no supporting audio or body camera existed)

33. In January 2021- present, DOA employees refused to identify themselves to date for the purposes of installing a $11,000 HVAC furnace. The DOA left on the gas with (5)+ separate gas leaks, approximately 45 days then mysteriously quit and left leaving the gas leaks. After leaving more than 30 days ago phoned in a " gas leak destroying the entire basement and first floor plumbing, split toilet, split sink, and frozen furnace

16

damages. A qualified electrician was hired who pointed out that the switch in the wall had also been changed (by the DOA), which would have ultimately resulted in an inevitable wall fire and combination of (5) gas leaks (unknown at the time) would have caused a gas explosion making the nexus of RICO and actors responsible for the discovered explosive event and damages. The DOA, after 30 days unceremoniously leaving chose to call We Energies 30+ days later to report a gas leak they knew about (30)+ days earlier without shutting off the meter, left leaking and mostly all plumbing exploded from being frozen, "after" We Energies shut off all heat/gas at the directive of the DOA without the authority and knowledge of the Claimant. (Video Surveillance Footages captured) The Claimant, having been top-selected of 1000+ applicants for emergency personnel at the electric gas company years ago discovered the hidden agenda (5) recorded gas leakage. The Claimant phoned We Energies Gas company, had them come out, and they in turn documented the damages by the DOA, cut all gas lines and dangerous conditions caused intentionally and placed their actions in writing. The DOA actions recorded were intentional, attempted murder and/or intentional RICO misconduct. Damage to property included: installed upside down plumbing exhaust system, incomplete installation of HVAC project, $9,000, resulting in plumbing and toilet frozen pipes and pipes explosion $1780, toilet and sink explosion/split, gas leaks correction new electric $3000. No SAC FBI investigation.(The recording is available and verification by We Energies Gas Company available.) (RECORDED)(video surveillance filmed) (hearing recorded) (documents saved)

34. Soon thereafter, a new stove for renovations of the rental employment income property was delivered from Lowes "without" knob. The electrician Dave Ghar from Elec Tech installed a new 230 volt floor outlet for the stove and the entire stove exploded and electrocuted the Claimant in front of Ghar, when the Claimant tried to place the missing knob back on the prong requesting possible electrical assistance for replacement of new knob attachment. (video surveillance filmed)(RECORDED)

35. From approximately FY2019 - FY
2022, the USPS mail was/has
been withheld intermittently
photographed and video filmed
1500+ days marking the house as vacant
even though the deed was shown in
person many time to USPS. It came to the
attention of the Claimant that the DOA
police directed by the actors
had/was disparaging,
the Claimant undermining USPS delivery
essentially defaming the Claimant
as a possible "illness" (, circulated and
published by the actors) to Claimant's UPS
Ohio virtual USPS never having

lived in Ohio or met this State Capitol Police Corporal. The same State Capitol police then attempted arrest of the Claimant, unexplained in Ohio and communicated their defamation to UPS. The Claimant has never received her response from the DOA for FOIA regarding the ongoing false arrest threats. Ms Garner has never had a conversation about any of his false claims by the DOA and recorded any/all conversations. (RECORDED) (Photographed/ Documented)

- UPS immediately shut down the Claimant's mailbox unknown to the Claimant marking incoming USPS mail as **fraud** unwarranted from the threatening defamatory DOA State Capitol capricious and arbitrary abuse of authority. Civil Rights violations s. 1983.

36. UPS mail was shut down in the City of Milwaukee on Jefferson St, unauthorized, (3) USPS shut downs, changes and closed causing loss of federal case. USPS delivery mail carrier was caught trespassing, captured on security surveillance cameras and photos, rifling through the Amazon Prime delivery of goods, reading the labels, trespassing on the physical porch whereas the mailbox is located off the property 40+ feet away, representing USPS. No FBI investigation of the ongoing blocked USPS mail interference, voting interference, etc. A total of $5,000,000 was demanded for the injury of sexual assault/abuse/USPS mail theft/ and intentional infliction of emotional distress.

37. Wrongful death of Ms Garner's mother
is attributed to all FBI known threats and
aforementioned
failures to investigate threats,
failures to act, failures to
to process a complaint
properly, failures to interview
federal employees, failures to stop and
intervene ongoing wrongful acts, WPA
ongoing threats, failures to disclose
concealed records and documents,
when credible witnesses were/are
available.

38. All ERD Milwaukee filings have been blocked, not cross filed. As of September 27, 2023, more than 10 faxes of a completed form were sent to the ERD Reyes and he has denied knowledge and receipt making a determination on this fraud. In fact, the Claimant ERD form was completed and sent via hired fax sender with receipts of receipt and process service with proof of service to both ERD locations City of Milwaukee and City of Madison. There was no FBI investigation to date by the SAC.

39. Milwaukee police McNulty, after learning about the withheld USPS mail (3) locations shut down incidents caused by wrongful actors' acts proven by police reports and the DOA defamation began threatening and defaming the Claimant who has never met this person. McNulty thought he had hung up the telephone on the Claimant when he had not. A recording of McNulty exists, with knowledge of the property, and Ms Garner demonstrates a prevalent global Blacklisting communications resulting in wrongful acts, and called the Claimant a "disability name."

40. Soon thereafter the blockage of the USPS culprit was discovered was the State Capitol Police DOA.

41.These wrongful acts are more disparaging remarks and McNulty knew or should have known that he does not know the Claimant or anything about the Claimant only something he heard.

42. These wrongful acts are ongoing and the threats were recorded and confirmed by Milwaukee Internal Affairs. (RECORDED)

43. The Claimant's claims regarding the circulation and publication of ongoing threats have been directed to the staff at Governor Tony Evers Office by the actors causing hatred, shunning and paralysis of the Governor's Office to safeguard the proper protocols for State law for the WhistleBlower Protection Act.

19

44. These incidents of disparaging wrongful acts were recorded and filmed and no action taken to straighten out the withheld USPS mail to date by the FBI and RICO defamatory communications witnessed by the DOD FY2017, and the FBI were notified June 6, 2017. No investigation involving the Claimant has ever occurred regarding ongoing reported threats, wrongful acts and communication, witnessed and reported by the DOD and a successfully completed Polygraph Test exist of the Claimant.

45. FY2019 a tracker on the Claimant's Google electronic mail account pinpointed the location of the ongoing agency hacker and PII breaches; it was found to be the DOA State Capitol police, before encountering resistance from the State Capitol Police and Raleigh NC Police failures to investigate a stolen government seized vehicle and circumstances. No investigation by the FBI has occurred, with failures to investigate timely. (RECORDED)

46. A Cease and Desist Notice was served upon the DOA State Capitol police and Governor Tony Evers Office staff upon learning of the pattern of disparaging WhistleBlower Retaliation and other wrongful acts, per events and incident reported. A report to the FBI and a Polygraph Test was completed by the Complainant passing at 100% truthful and 100% no deception.

47. The FBI SAC has never taken responsibility, never acknowledged, nor told anyone including State police of the personnel involved, nor has there been an investigation involving the Claimant performed. The nexus of the cause and responsible parties did not occur until the verification of ongoing incidents of disparaging false statements were confirmed through the FOIA requested and withheld for months FY2023 August 7.

48. On June 6, 2017, the FBI had complete autonomy and access to all radar flights, events, and recordings by the US Air Force, and photographs were produced regarding the events captured at 1688 South 236th Dr, Buckeye Arizona, but failed profusely to pull the radar flight information or even attempt to investigate. This threat created a loss of the Claimant's 1st newly built home $385,000 at the time of valuation October 22, 2023. The FBI had been knowledgeable of threats against the Claimant as she reported this incident in person to the FBI. Based upon information, and therefore belief, there was a conspiracy amongst the above named actors, parties per credible witnesses, credible sources and polygraph test results. By and through their agents, concealment has occurred and continues to occur of RICO crimes and an attempt to avoid detection and scrutiny from Congress and/or other regulatory agencies.

49. To date, no employees/employer has reported the contacts, defamation and disclosures regarding the above aforementioned planned adverse events. (RECORDED)

50. There was and is an unexplained delay by the FBI in pursuing the investigation, credible witnesses, credible photos, credible sources and evidence of RICO crimes, due to the evasive disparaging wrongful acts of the actors WPA.

51. DOL was captured via the 2 party consent crime exception law, in which Deanna Broker, former supervisor, was possibly on a call as a California Civil Rights Division Investigator. To date, no response Broker's purported identity as a "investigator" has been verified by the California Civil Rights Department as requested. Recording 2 party consent crime exception law (RECORDING)

52. On June 6, 2017 - present, the FBI failed to act appropriately and in a timely way with regard to the June 6, 2017 allegations against her dual appointment of federal employers/employees actors. No affiant signature or report was filed on the Claimant's behalf or collection of documentation occurred or investigation. The FBI never responded and continued to "stonewall" in an effort to conceal its own culpability for its failures.

53. On June 6, 2017 - present, senior officials in the FBI Arizona Field Office failed to respond to the allegations with the utmost seriousness and urgency that the allegations deserved and required, made numerous and fundamental errors by failures to protect a WhistleBlower, and violated multiple FBI policies, when they failed to undertake and investigative unlawful activity, because per witnesses they were told and instructed to do so, attempting to shield with partiality, the US DOJ Assistant Attorney Harwood from losing her case, the beginning of the WhistleBlower Retaliation and residual effects afterwards, contrary to the impartiality policy.

A.

The allegations reported to the FBI on June 6, 2017-present, concerned twice sexual assault/abuse, fraud and deleting of devices, illegal detainment, exonerated and vindication of false police reporting of assault with no assault victim and credible evidence from the purported Holiday Inn Corporate Headquarters who Nelson a k.a. Neilson wrote that no such incident occurred, detainment up (7)+ days resulting in catastrophic brain injury left on the floor then dragged on the bed (9)+ hours then billed on the Claimant's credit report, threats at her houses captured by photograph and video surveillance cameras, recordings of multiple threats, imposter false claims ongoing incidents crossing state borders global crimes. The FBI decided not to act on multiple opportunities to prevent the catastrophic injuries by the actors. The deliberate failure of the FBI to act appropriately and in a timely way placed the Claimant in harm's way.

B.

The responsible agents failed to interview and investigate credible witnesses DOD William Stall, James Knight, Carla Mungai, Michael Leon Greene, his family, high school colleagues, Mark Hendricks, Christina Curran, 3rd party(ies) who were willing to talk at the time of the reported threat incidents.

C.

The Arizona Field Office did not properly document the June 6, 2017 meeting with the Claimant. Mr. Schaeffer SAC failed to properly handle and document receipt and review of the photos, evidence and signature of the Claimant reported sworn affidavit per policy. The Claimant victim interview alleging criminal claims never properly documented June 6, 2017. No FD-302 report with signature ever occurred after the June 6, 2017 interview and Mr. Schaeffer SAC, did not draft the FD-302 of the June 6, 2017 victim interview ever.

D. It is estimated that multiple incidents of disparaging wrongful acts resulting in detainment, reputational harm and other injuries could have been avoided had a proper and timely investigation took place.

E. The responsible agents failed to transfer the matter to the proper authorities.

F. Officials at the Arizona FBI Office who were obligated to report to local law enforcement agencies regarding the threats at the Claimant's home failed to do so and allowed detainment by the same local law enforcement parties.

G. Officials at the Arizona Office failed to formally document the June 6, 2017 meeting or to record witness statements, in violation of FBI and DOJ policies.

H. The FBI's officials handling of the Claimant's complaints did not and has not taken responsibility for their failures. Instead, they have provided no investigation or any information to date. The FBI failed to expeditiously notify local law enforcement of the information it had learned or take other action to mitigate the ongoing danger that multiple credible witnesses disclosed, before injuries occurred.

54. Mr. Schaeffer SAC violated the FBI's conflict of interest policy by failure to investigate, contact credible witnesses and failures to get all actors involved and interviewed. Mr. Schaeffer SAC was fully aware that this type of failure would raise a question regarding his impartiality.

55. Mr. Schaeffer, FBI officials, made deliberate, deceptive decisions designed to evade or minimize the FBI's responsibility for failing to stop the threats of unwarranted detainment, or to mitigate the harm to the vulnerable Claimant allowing the threats to be carried out upon the same day reported and carrying out threats and crimes unabated.

56. The FBI's actions in concealing the truth regarding its own failures included misrepresentation among internal FBI personnel, resulting in bureaucratic paralysis that prevented the FBI from properly investigating and discharging its mandatory duties, including reporting previous crimes during the WhistleBlower cases settlement agreements       CV-15-01425-PHX-GMS,       CV-16-00533-PHX-GMS,       MSPB

SF-315-H-16-0633-I-1 and (6) other pending cases consolidated for ongoing WhistleBlower crime incidents against the Claimant to local law enforcement so that they could act to prevent the DOC, DOL, DOD defendants from engaging in further acts of abuse.

57. Each act of concealment, evasion, or misrepresentation by the FBI compounded the problem, causing the Claimant to suffer further ongoing abuse, without intervention by federal, state, or local authorities who, but for the FBI's actions, would have been in a position to stop the Whistleblower Retaliation. It is based upon information, and therefore belief, that officials within the highest ranks of the FBI knew of allegations against the Claimant, including the United States who sequestered the DOC Denver Regional Office, yet refused to execute their official duties to stop known threats of unwarranted detainment. During the period in which the FBI had knowledge of threats, no one under Director James Comey's direction executed their duties to protect the Claimant who could not defend herself from all threats. This is one of the worst dereliction of duty since the US Gymnastics/Nassar case.

58. The Inspector General received a number of reports regarding all the aforementioned adverse threats notifications and to date no referrals were made by the DOJ for criminal prosecutions of the responsible FBI employees and officials.

A. The FBI employees have betrayed the core duty that they have of protecting people and certain FBI agents failed to carry out the vital mission of protecting federal government employees and
American people. Special Agents in Arizona failed to carry out even the most basic parts of the job.

B. The Special Agent in Charge in Arizona' behavior also reflects violations of the FBI's longstanding code of conduct and ethical obligations of all FBI employees, especially senior officials, a gross misconduct.

C. The FBI agents failed back in FY2017.

D.Criminal prosecutions are warranted in this retribution and FBI's negligent inaction case. The United States should reopen and unseal the WPA cases and the WhistleBlower Retaliation Acts should allow for an investigation into the criminal conduct, conduct of the FBI, Buckeye AZ police department employees and officials responsible for handling the Claimant's claims.

### III.
### Statement of Facts Regarding the Statute of Limitations Discovery Rule and Fraudulent Concealment

59. The United Supreme Court has recognized a discovery rule for claims brought against federal agencies under the FTCA. *United States v. Kubrick*, 444 U.S. 111, 120,100 S. Ct. 352, 62 L.Ed.2d 259 (1979).

60. Claims must be presented in writing to the appropriate Federal agency within two years after the claim accrues. 28 U.S.C. §2401(b).

61. Under the discovery rule, the claim accrues when the claimant "knows both the existence and cause of [her] injury." *Id*. at 113.

62. In these ongoing negligent, wrongful acts, under the Doctrine of Continuing Offenses, "where there is a series of continuing wrongs," the statute of limitations will be tolled to the last date on which a wrongful act is committed, April 29th, 2024 and continuing. The statute of limitations for a continuing offense **does not run until the last act is done,** which, viewed alone, is a crime, as in this case. *State v. Miller*, 2002 WI App 197, 257 Wis. 2d. 124, 650 N.W.2d 850, 01-1406 651. STATUTE OF LIMITATIONS FOR CONTINUING OFFENSES Normally, a statute of limitations begins to run on the date when the offense is completed. <u>See</u> *Toussie v. United States*, 397 U.S. 112 (1970). Some offenses, by their nature, have attributes of non finality and are called continuing offenses. For example, as is conspiracy, conspiracy is a continuing offense. For statutes such as 18 U.S.C. § 371, which require an overt act in furtherance of the conspiracy, the statute of limitations begins to run on the date of the last overt act. <u>See</u> *Fiswick v. United States*, 329 U.S. 211 (1946); *United States v. Butler*, 792 F.2d 1528 (11th Cir. 1986). For conspiracy statutes which do not require proof of an overt act, such as RICO (18 U.S.C. § 1961) or 21 U.S.C. § 846.

63. Claimant was unaware that the failure of the FBI to carry out their mandatory duties in a diligent and reasonable manner was the cause of her ongoing injuries.

64. Claimant did not know, nor should she have known until August 7, 2023 FOIA that the FBI's failure to eliminate the various ongoing threats were caused by the FBI's failure to carry out their mandatory duties in a careful, prudent, and reasonable manner.

65. Similar to the discovery rule, the Doctrine of Fraudulent Concealment is a means available to the claimant to toll the statute of limitations, as in this case.

66. In order for a Claimant to prevail on a fraudulent concealment claim, the FBI "must have engaged in fraud or deliberate concealment of material facts relating to the Agency's wrongdoing and the Claimant must have failed to discover these facts within the normal limitations period despite her existence of due diligence," as in this case.*Torres Ramirez v Bermudez Garcia,* 898 F.2d 99,101(1st Cir. 1979).

67. In 2017 - present the FBI's Arizona field office deliberately concealed the fact it did not open a proper investigation and covered up their negligence, when the Claimant was sexually assaulted/abused twice.

**IV**.
**Statement of Facts Regarding the Claimant**

A. Theresa Garner

68. Theresa Garner is a graduate of the University of Wisconsin Lacrosse, Bachelor of Science, Business Administration Triple Minor, law studies and was the first in history of the United States to become Dual Appointed with the US DOC and US DOL, and had taken first place in the Nation in the Census Population Count FY2010 Wisconsin as a Partnership Specialist, top selection from the top performance computer generated resume, and top performance US DOD DECA DLA Yuma, Arizona.

69. Ms Garner was in charge of the Milwaukee suburbs (18) township, villages, cities and participated in WhistleBlower litigation against a federal government employee Roger Quindel for his frequent racist conduct, hostile work environment, slurs, police reported theft twice, lock out, harassment of African Americans, and full blooded American Indians Assistant Managers describing them as lazy drunks and the American Indians race could be more productive if they stopped "drinking" at meetings ...etc. These managers (4) came to the Claimant for assistance due to the ongoing slurs, racist behavior and misconduct of Mr Quindel.

70. One American Indian asked him to stop his racist slurs and he fired him, with no authority to do so. Quindel was terminated and the WhistleBlower Ms Garner was punished and retaliated by the Chicago Regional Office Headquarters allowing Quindel to change the locks on her office door, stole her property, and money, hiding her property and promotional items in a warehouse.

71. Ms Garner had to call the West Allis Police detective twice to force Quindel to return her personal and professional property, and promotional items to do her job, before his termination, after he had learned about the American Indian and EEO complaints. Quindel was "not" Ms Garner supervisor, but continued to direct and act as though he was her supervisor against agency's directive.

72. A valid deposition in the District Court of Arizona was completed by the American Indian. Bonuses were given out for the successful 2010 1st place results in the Nation accomplishment of $10,000, but the Claimant was punished for the WhistleBlower disclosures and was given nothing, zero for her top performance in the Nation. She was in the middle of building her new house and was forced to sell her new motorhome.

73. Despite this setback, Ms Garner persevered the WhistleBlower Retaliation and again immediately secured one of the top performance record in the Nation if not the top performer, secured dual appointment first in history of the United States, the Claimant new permanent position in Arizona garnered her once again first place, and first selection for a position, with the DOD DECA DLA computer generated resume results, top competitive service selection in the Nation.

74. Ms. Garner was twice sexually abused devices deleted and was warned by the DOD of upcoming planned injuries, during 2 of 2 unwarranted threats detainment FY2017, 2018, WPA wrongful threats, police threats, State Capitol Police threats, unwarranted FY2019, FY2020, FY2021, FY2022, FY2023, and ongoing false assault claims, which never happened circulated by the actors as a disability having participated in valid WhistleBlower activities. The Claimant noticed the FBI throughout the entire continuous violations pursuant to the Continuous Violations Doctrine, but was ignored non response to date.

75. The DOD supervisors James Knight, and William Stall had knowledge and later college colleagues Michael Leon Greene and family members confirmed Blacklisting and Blackballing and others revealed being contacted by the federal government employees actors and planning of injurious wrongful misconduct for having participated in the above Whistleblower activities.

76. Ms Garner was found not to have assaulted anyone falsified and spread by the actors, Buckeye Arizona Police Department, Eduardo Cruz, Granniss, and Sanders who filed a falsified police report and should be prosecuted and investigated for the origination of the circulated rumor by the FBI.

77. The claim was entirely made up to fit the planned actor(s) revenge, threats, wrongful acts and WPA scenario.

78. The Holiday Inn manager Mrs Cruz was the wife of Officer Eduardo Cruz Buckeye Arizona, both falsely made up that Ms Garner "welded a cane" and "assaulted a fictitious victim", when no such incident or victim or assault ever occurred or existed. No investigation, interview or prosecution or arrest by the SAC FBI.

79. A videotape surveillance cameras footage was later produced given to the Claimant and purported Letter of Exoneration, Vindication from the Holiday Inn Corporate Headquarters, cleared the Claimant, however not before being sexually assaulted/abused (7)+ days detainment/section beyond the statute of 3 days, false detainment resulting in convulsions, unconsciousness injuries left on the floor dragged later on a bed left for (9)+ hours, without medical ambulance or medical assistance and returned back without any medical treatment.

80. The same officers' government seized Ms Garner's vehicle, and openly lied about their knowledge to date, her car has not been returned to date claiming falsely no knowledge, and the DMV allowed sale of Ms Garner's vehicle despite having a stolen police report on the police database.

81. The same officers were involved in the actors directed RICO wrongful acts without investigation by the FBI.

82. Ms Garner was billed for the incident and placed on her credit report unknown at the time of placement, caused by the actors "planned" injuries, per witnesses DOD and many others told to Ms Garner, and Ms Garner made a formal in person FBI report of a notified threat and military force at her house producing photograph evidence captured to FBI Agent Schaeffer Arizona Field Office.

83. The FBI possessed a credible complaint with credible witnesses from numerous sources and corroborating evidence of WPA threat.

84. Ms. Garner treatment from injury occurred at the Peoria Emergency Hospital. Ms Garner injuries included head injury and brain trauma from convulsions and sexual assault and intentional infliction of emotional distress.

85. Ms. Garner has suffered and will continue to suffer permanent psychological trauma from both the sexual abuse, as well as institutional betrayal, stemming from the failure of institutions, including the FBI, to protect her from abuse.

86. Ms. Garner earned health insurance benefits have been withheld by the federal government employers even though this misconduct is inapposite of the DOL's settlement agreement and has undergone emergency care for the injuries since 2017. She suffers from sexual assaults abuse by the federal government employee at the border of Niagara Falls New York Sgt Kim and Sgt Eden supervisor sexual assault/abuse, threats by federal employer, compensation damages has been submitted.

87. Ms. Garner also experienced economic damages resulting from the abuse by the actors in the form of a loss of rental income and future rental income from loss of rental property, whereas the PII credit cards breaches by the federal government employees/agency DOC caused a lawsuit of an unknown lien, damages on property and loss of property.

88. Threats at 1st home, detainment caused opportunities and a loss of (2) homes known threats by the SAC FBI directed by the actors to police officers ongoing without FBI investigation upon reporting threat.

89. Vehicle loss by fraud and theft by the actors to Buckeye Police, Amanda Nelson and Julie Nelson a k.a. Neilson fraud, $100,000.

90. As a result of the FBI's gross negligence and misconduct in handling the investigation, Claimant Theresa Garner has suffered and will continue to suffer severe physical, psychological and emotional distress and economic loss, knowing that the failure of the FBI directly resulted in her twice sexual abuse after 2017.

91. With the publication of FOIA and PII released by the DOC to the State Capitol Police, the FOIA Report disclosed intent of harm, intent of unwarranted threats of actions already taken unknown at the time, and a falsified police conversation that the claimant has recorded as falsified.

92. The FBI's handling of the Claimant's matter, on August 7, 2023, or shortly thereafter, discovered that the sexual assaults, detainment, ongoing disability threats; she has endured after June 6, 2017 were caused by the FBI's negligent failure to perform its mandatory duties in the manner as set forth in this Claim.

93. Because the FBI has provided no information to the public explaining its conduct in mishandling the claimant's matter and fraudulently concealed its negligence in handling the investigation, Claimant, with reasonable diligence, could not have discovered the existence of a cause of action against the FBI until August 7, 2023 FOIA response previously withheld.

### V. The FBI's Non-Compliance with Its Mandatory Duties

A.

Relevant Mandatory Duties

94. The many mandatory duties violated by the FBI in response to the claimant's report of threats, false claims, disability false claims and detainment attempts covering up for wrongful acts and wrongdoing, ongoing incidents of the actors abuse include those set forth below:

B.

The FBI is required to document information gathering, response to FOIAs and investigative activities so that the agency can conduct effective investigations, gather and analyze intelligence, and assist with prosecutions. This mandatory documentation includes the completion of a FD-71, which opens the case, as well as Form FD-302, which is used to document interviews and must be completed within 5 days of the interview. Proper record management is required to facilitate the timely retrieval of needed information, ensure continuity of FBI business, safeguard "mission-critical" information and preserve the FBI's "corporate memory and history."

C.

FBI personnel are required to ensure that all digital evidence is marked and subjected to a content review. Documentation of digital evidence must be completed within ten days of receipt. Improper handling of documents or property is a violation of the FBI Offense Code, Section 1.6.

D.

The FBI is required to take specific steps when crimes against adults are brought to the agency's attention. They must report and maintain regular contact with the Violent Crimes and state and local law enforcement agencies as well as nongovernmental organizations and social service agencies.

E.

FBI personnel are required to report false detainment, and abuse to the state and local law enforcement agencies that have jurisdiction to investigate such reports immediately upon learning of the possible abuse and sexual assault, and false statements and reporting by a police officer.

F.

The FBI Mandatory Reporting Policy also requires that "all FBI employees shall report suspected abuse, neglect or sexual exploitation to the state, local or tribal law enforcement agency that has jurisdiction to investigate such reports or to protect the adult from police brutality. " The report must be "immediate."

G.

FBI employees must provide statements which are free from false and misleading statements and contain all material information. FBI Offense Code 2.3, False/Misleading Information - Investigative Activity is violated by a FBI employee "knowingly providing false or misleading information in an investigative document; or by signing or attesting to the truthfulness of the information provided n an investigative document in reckless disregard of the accuracy or completeness of the pertinent information contained therein." Investigative documents include the FD 302 which documents investigative interviews. FBI Offense Code 2.6 also prohibits FBI employees from knowingly providing false information in a verbal or written statement made under oath. This prohibition applies to false statements, misrepresentations, the failure to be fully forthright and the concealment or omission of a material fact. It is also a violation of federal law, specifically 18 USC § 1001 to falsify, conceal or cover up a material fact, make a materially false statement or representation or make or use any false writing.

H.

29

When an FBI employee's participation in a matter would raise questions about his or her impartiality, the employee must only participate if authorized in writing by the FBI based on a determination that the interest of the Government in the employee's participation outweighs concerns and questions raised about the integrity of the FBI's programs and operations. Unless authorized, an FBI employee must not participate in the matter. 5 CFR § 2635.502(d).

I.

**Violations of Mandatory Duties**

95. The following acts or omissions of the FBI and its agents and supervisory personnel are violations of the mandatory duties required of the agency as identified above.

A. Mr. Schaeffer, the Special Agent in charge of the Arizona Field Office, and two other FBI employees met with Theresa Garner on June 6, 2017. Ms Garner reported the allegations that her federal government employee James Knight, William Stall, college and high school colleagues had disclosed before detainment happened. Ms. Garner described the nature of the allegations, provided a memorandum outlining the allegations and brought evidence. The FBI, however, unknown to the Claimant failed to document this meeting in violation of FBI policy, so there is little, if any, contemporaneous FBI documentation of the meeting.

B.

The Arizona Field office conducted little to no investigation in response to the report of threats of unwarranted detainment, disability false claims and military force at the claimant's home. Despite the fact that the Claimant gave them the names of three credible witnesses to interview, the FBI spoke to no one to the best of knowledge after the initial report was received. The interview should have been conducted in person. In addition, the FBI failed to provide victim services regarding the threats to the claimant as required by FBI policy and procedures. The FBI also failed to document the interview on Form FD-302 as required and never performed any FD-302. No FD-302 report was made and outright omitted statements and omitted other important details. In sum, the FD-302 was actually never completed or signed.

C.

The FBI's Arizona field office failed to follow the mandatory policy for processing evidence. After receiving photographs and offering of evidence from Ms Garner, the FBI did not document receipt, image the photos or even review its contents.

D.

The FBI failed to comply with its mandatory duties to document its investigative activities after receipt of the Claimant's complaint about detainment claims by the DOD, college colleague and others federal government employees and supervisors, including the interview with the Claimant, attempts to contact other supervisors, witnesses identified by the Claimant. There was also no documentation of the preparation of the FD-71 opening the file or handing it to the correct locations. This led to a delay over years, before the allegations of serious threat, false disability claims from falsified police report sexual abuse and detainment were investigated by the proper FBI field office and local authorities. During that time, Ms Garner suffered attacks and threats, injuries, house and damage losses, car and contents loss, financial losses, reputational damages and sexual assault/abuse.

E.

The FBI ignored its mandatory obligations under federal law as well as FBI policy to promptly notify state and local authorities about the claimant allegations. Proper disclosure to Arizona and other local law enforcement would have allowed for steps to be taken to address Claimant's ongoing
battles to stop the blacklisting, threats based on false disability statements circulated and published to police by the actors.

F.

The FBI also violated mandatory duties regarding obligations to make statements which are free from false and misleading information and/or omitted statements. Instead, FBI repeatedly failed to act, omitted basic duties and responsibilities in order to cover-up and hide from the public federal agency WhistleBlower Retaliation planned injuries in retaliation for the past Whistle Blower activities.The FBI had allowed agencies employees to continue to participate in false claims, detainment plans per witnesses to continue the abuse and assault of the Claimant, without regard to the safety and well-being of the Claimant throughout the years.

G.

Officers in the Arizona Buckeye Police Department intentionally falsified a police report and were providing false information hiding responsibility and later falsified knowledge of Ms Garner vehicle. The officers actually phoned the Claimant witnesses of their knowledge and possession of the vehicle. No FBI investigation with witnesses named occurred and the false detainment was orchestrated and planned per witnesses disclosed before detainment. The FBI should have interviewed named witnesses and the police who falsely made up an incompetent story of assault which could have been easily proven as false. The FBI were notified during the false detainment directly after

31

visiting the FBI Office in Arizona June 6, 2017. FBI SAC hung up on the claimant while she was eventually sexually abused/assaulted.

H.

Arizona FBI officials never notified the local law enforcement about the claimant complaints. The failures to act possibly implicates the FBI culpability and intent, certainly creating at the very least the appearance of a conflict of interest.

## VI.

### Statement of Legal Claims

96. The Federal Tort Claims Act provides that the United States shall be liable in the same manner and to the same extent as a private individual under like circumstances. 28 USC § 2674.

97. The FBI is liable for the knowledge of and acts and omissions of its agents and employees, including but not limited to Mr. Schaeffer, and at least (2) additional agents and (2) attorneys.

98. The events giving rise to these claims occurred in the State of Arizona, Wisconsin, New York, Illinois, California, other States and Washington DC headquarters.

A. Negligence

99. Arizona, Illinois, New York, Wisconsin, Washington DC and California recognize that a private individual is subject to liability arising from tort duties when that duty is assumed either gratuitously or voluntarily.

100. "The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonable person." *Yost v Wabash College* 3 NE 3d 509, 517 (Ind 2014); *Artiglio v. Corning Inc.* 18 Cal.4th 604, 613, 76 Cal.Rptr.2d 479, 957 P.2d 1313(1998).

101. Arizona, Illinois, New York, Wisconsin, Washington DC and California generally follow the concept established by Section 324A of the Restatement of Torts 2d. That section provides:

§ 324A Liability to Third Person for Negligent Performance of Undertaking One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if 24 (a)(b)(c) his failure to exercise

reasonable care increases the risk of such harm, or he has undertaken to perform a duty owed by the other to the third person, or the harm is suffered because of reliance of the other or the third person upon the undertaking.

102. By undertaking the investigation interview, the FBI owed a duty of care to the Claimant and who continued to be abused by federal government employees because of the dereliction of duty of FBI officials, which allowed the federal government employees to continue predatory behavior for an additional 60+ months and no action was taken by the FBI.

103. As a direct and proximate of the FBI's negligence, the Claimant has experienced all of the injuries and harm alleged above.

B. **Negligence - Special Duty**

104. Adopting the Restatement (Third) of Torts, § 41, Arizona and California law provides that a private person owes a duty to a third person when there is a special relationship involved.

The Restatement provides that:

There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless: a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

b) A special relation exists between the actor, which gives to the other a right to protection.

105. Applying this section, Arizona and California courts have found that the law may impose a duty to control the conduct of a third party when three factors are demonstrated; 1) where a person is in need of supervision or protection (such as a child, intoxicated person or business invitee) 2) from someone who is an superior position to provide it and 3) that person has a right to intervene or control the actions of the other person, Sports, Inc v Gilbert 431 NE2d 534 (Ind Ct App 1982); Regents of University of California et al v The Superior Court of Los Angeles County, 4 Cal.5th 607,413 P.3d 656,230 Cal. Rptr. 3d 415 (Cal Supreme Ct, 2018).

106. As a direct and proximate of the FBI's breach of its special duty to Claimant,

Claimant has experienced all of the injuries and harm alleged above.

C. Negligent Infliction of Emotional Distress

107. The FBI also is liable for negligent infliction of emotional distress of the Claimant by its negligent investigation into the planned injuries, twice sexual abuse and assault, disability false claims from falsified police reporting directed by the actors.

108. The California Supreme Court has recognized the tort of negligent infliction of emotional distress. *Delta Airlines v Cook* 821 NE2d 400, 403 (Ind Ct App 2005); *Burgess v Superior Court of Los Angeles County*, 2 Cal. 4th 1064, 831 P.2d 1197,9 Cal. Rptr. 2d 615(Cal Supreme Ct, 1992)

109. Claimant suffered an extreme emotional trauma caused by the failure of the FBI to properly investigate the planned false detainments, false claims of disability allegations from first sexual assault and abuse exonerated and vindicated, which resulted in harm and injuries and continued abuse without investigation.

110. As a direct and proximate of the FBI's negligent infliction of emotional distress, Claimant has experienced all of the injuries and harm alleged above.

D. Negligence *Per Se*

111. Pursuant to Arizona, and California law, "the unexcused violation of a statute or ordinance constitutes negligence per se if the provision protects the class of persons in which the plaintiff is included and protects against the type of harm that has occurred as a result of the violation." *Gresser v Reliable Exterminators, Inc* 160 NE2d 184 (Ind Ct App 2020); *Christensen v. Superior Court of Los Angeles County*, 54 Cal.3d 868,820 P.2d 181,2 Cal. Rptr.2d 79 (Cal Supreme Ct, 1991) and Cal Evidence Code, §669.

112. Both Arizona and California law, as well as FBI policy, required FBI agents to report allegations of false detainments, sexual assault/abuse to the appropriate state agency. Instead, the responsible parties at the FBI delayed conducting their own investigation, and ultimately did no investigation, only a perfunctory investigation.

113. The FBI never reported the allegations to any State agencies as required by law. The FBI's failure to comply with these laws and protect adults constitutes negligence *per se* for which it is liable.

114. As a direct and proximate of the FBI's negligence *per se*, Claimant has experienced all of the injuries and harm alleged above.

## VII. Relief Requested

Claimant request that she be compensated by the United States in the amount alleged in her SF95 Administrative Claims for all the injuries and harm inflicted upon her by the wrongful conduct of the FBI as alleged in this SF95 Administrative Claim.

Counsel for Claimant


Exhibit A


**Authorization and Contingent Fee Representation Agreement Concerning the Prosecution of Claims Under the Federal Tort Claims Act**

1. Scope of Representation and Authorization: Client retains Firm to prosecute Federal Tort Claims Act (FTCA) claims against the Federal Bureau of Investigation (FBI) for economic and emotional distress damages arising out of multiple incidents. Client authorizes the Firm to act on her behalf in the prosecution of a FTCA claim against the FBI.

2. Fees and Costs: Client will pay to Firm 25% of the Net Recovery secured by Firm for the benefit of Client in the FTCA proceeding. If, however, the claims are resolved at the administrative level prior to filing the case in federal court, clients will pay Firm 20% of the net recovery. Client will owe no fee unless there is a successful recovery. Firms will pay all litigation costs necessary for the prosecution of the Client's claims.

3. Exclusive Agreement: This is the sole Agreement between the parties regarding the FTCA claim and this Agreement may only be modified by a writing signed by all parties.

-DocuSigned by:

(.                        ) Esq

Client

Date: 4/29/2024


EXHIBIT B- WITNESSES

1. James Knight-DOD

2. William Stall-DOD

3. Representatives and employees of the FBI with knowledge of the facts alleged here including: SAC SCHAEFFER

4. Carla Mungai

5. Mark Hendricks

6. Cathy Lacy

7. Former President Obama

8. Vice President Biden

9. Governor Tony Evers

10. Michael Leon Greene

11. Other witnesses, Governor Tony Evers and staff

12. Sgt Adam Haas

13. Heidi Marshall

14. Cpl Solely

15. Robin Pfaff

16. Michael Leon Greene family

17. Michael Smith

18. Greg Ware

19. Relatives (5)

20. Officers Eduardo Cruz

21. Officer Granniss

22. Officer Sanders

23. Stanley Moore

24. DOD employees Ramona

25. DOD

26. DOL-Deanna Broker

27. Dr. John Ellis

28. Officer McNaughtry

29. Julie Nelson a.k.a Neilson

30. Attorney Nino Abate

31. Amanda E Nelson

## **Certificate of Service**

The FTCA SF95 was served upon the United States Department of Justice Federal Bureau of Investigation on April 29, 2024 by process service.

*Theresa Garner*
_____
Ms Theresa M Garner
Representative Sanders

38

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| FBI<br><br>935 Pennsylvania Ave. NW Washington | Theresa Garner<br>2509 N 18TH ST MILWAUKEE WI 53206<br>(PROPERTY LOSS)(PREVIOUS ADDRESS)<br>(Business mailing    Address) |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 8/19/1963 | Single | 9/27/23 - 9/26/21 (ongoing) | N/A |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Failure to act, Failure to investigate, Failure to Interview, Failure to create a report, Negligence and Gross Negligence. See attached files 1-37 pages

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code)

1688 S 236TH DR, BUCKEYE, AZ 85326 (PREVIOUS HOME) 2509 N 18TH ST MILWAUKEE WI 53206

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

The details of the damage & location & nature are described in ~~Exhibit 2~~ attached. TG. Brief 1-37 pages

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached ~~as Exhibit 1~~ brief 1-37 pages As a result of the FBI's negligence in responding to the complaint of threats by credible witnesses notice. Claimant suffered extensive harm.

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Exhibit B | See attached witnesses p. 35-37<br>EX. B |

**12. AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights) |
|---|---|---|---|
| $1,785,000 | $20,005,000 | $10,000,000 | $31,971,400 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] | TG. ~~262-233-9043~~ 702-687-9248 | 4/28/24  ~~9-27-2023~~ TG. |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

The amount claimed should be substantiated by competent evidence as follows:

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically reparable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

(d)  **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A.  Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  Principal Purpose: The information requested is to be used in evaluating claims.
C.  Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

**Re: Theresa Garner**

OMB No.: 1105-0008

## AFFIDAVIT OF SERVICE

I, Ambiko Wallace, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the SF-95: Claim for Damage, Injury, or Death with Attachments in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 09/28/2023 at 2:58 PM, I served Federal Bureau of Investigation at 935 Pennsylvania Avenue, NW, Washington, DC 20535 with the SF-95: Claim for Damage, Injury, or Death with Attachments by serving Paul Wellons, Esquire, authorized to accept service.

Paul Wellons is described herein as:

Gender: Male   Race/Skin: White   Age: 46   Weight: 170   Height: 6'0"   Hair: Bald   Glasses: No

I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

Sworn to before me on 09/29/2023

_Angela H. Croson_
Angela H. Croson
Notary Public, District of Columbia
My Commission Expires: March 31, 2024

Ambiko Wallace

Client Ref Number:N/A
Job #: 1624280

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050



**PEI**
Personnel Evaluation, Inc.

*Building Quality Workforces*

June 27, 2019

Dear Ms. Garner:

On June 26, 2019, Theresa Garner voluntarily came to this polygraph suite for a polygraph examination. The main issues under consideration were concerning her government employment issues from 2016 to date. Case fact information was provided by Ms. Garner.

In the polygraph recordings, there were no indications of deception when Ms. Garner answered all of the pertinent test questions, which were:

1) Around September 2016, did your Produce Manager Jim meet with you in his office and notify you that he just learned of negative intent toward you concerning your employment? Answer: Yes
2) Around September 2016, did you meet with Tracey Prevear (DECA employee) at which time you accepted insurance benefits, your beneficiary and salary multiplications? Answer: Yes
3) After approximately two months in employment in 2016, did DLA Wright and Danisha Woods notify you that your leave was transferred when no transfer occurred? Answer: Yes
4) Up to your retirement in May 2018, did DLA Robert Hill properly transfer your correct paperwork including income, benefits, beneficiaries and other records to the Office of Personnel Management? Answer: No
5) Around November 2016, did the DLA Worker's Compensation Office delete your Worker's Compensation Application for Injury Reccurrence without your permission or knowledge? Answer: Yes

It is the opinion of the examiner, based on the subject's polygraph records, that she is telling the truth on the above listed questions.

Respectfully

*Jeffrey A. Arbinger*

Jeffrey A. Arbinger
Polygraph Examiner

ppoly.tgarner

11138 W. Greenfield Avenue    Case 2:24-cv-00631-JPS   Filed 04/28/24   Page 42 of 42   Document 1    (414) 256-3600
Milwaukee, WI 53214-2362                                                                                         (414) 256-3606
www.peiasap.com